UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Docket No.:  21-cr-10224-IT |
| | ) |
| ATTICUS BERNARD | ) |

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM REGARDING APPLICABILITY OF §4B1.5(b)**

**I.      Introduction**

On March 1, 2023, the Probation Department revised the Presentence Investigation Report. Its revision adopted the government's post-draft position that USSG §4B1.5(b) applies at sentencing in this case. For the reasons stated below, Mr. Bernard objects to the Court applying this provision in calculating the guidelines. Even if the Court finds that the low threshold for this guideline commentary "pattern of activity" is instructive and has been established by the circumstances before it, this finding should be given no weight in determining an appropriate sentence. Based on a fair balancing of all facts and circumstances in this case, including the required statutory factors, Mr. Bernard maintains that a sentence of 15 years is sufficient but not greater than necessary to accomplish the goals of sentencing.

**II.     Inapplicability of 4B1.5(b)**

    **a. Plain Meaning of the Guideline Is Not Ambiguous and Does Not Include Mr. Bernard.**

USSG §4B1.5(b) provides for an increase of 5 offense levels in any case in which the instant

1

offense is a covered sex crime and neither §4B1.1 (career offender guideline) nor §4B1.5(a) (instant offense committed subsequent to sustaining at least one sex offense conviction) apply, and the defendant engaged in a pattern of activity involving prohibited sexual conduct.

The commentary defines "prohibited sexual conduct" to include the production of child pornography. *See* Note 4(A). "Pattern of activity" is defined generally as occurring, "…if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *See* Note 4(B)(i). The commentary further notes, "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." *See* Note 4(B)(ii).

Courts treat the Sentencing Guidelines as legislative rules, and the Sentencing Commission's comments interpreting its Guidelines as interpretive rules. Stinson v. United States, 508 U.S. 36, 44-45 (1993). Historically, courts applied deference to the Sentencing Commission's commentary pursuant to the holding of Auer v. Robbins, 519 U.S. 452 (1997), unless that interpretation was plainly erroneous or inconsistent with the Guideline. Stinson at 47. However, in Kisor v. Wilkie, the Supreme Court clarified that before according Auer deference to agency rules, a court must exhaust all the "traditional tools" of construction to find that a rule is genuinely ambiguous. 139 S.Ct. 2400, 2415 (2019). In determining whether ambiguity exists, "a court must 'carefully consider[ ]' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." Kisor at 2415. "If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law." Id. "If genuine ambiguity remains, moreover, the agency's reading must still be 'reasonable.'" Id.

2

For example, in United States v. Banks, the Third Circuit recently held that in light of Kisor, because the commentary to §2B1.1 expands the definition of "loss" by explaining that generally "loss is the greater of actual loss or intended loss", it should be accorded no weight. 55 F.4th 246, 258 (3rd Cir. 2022). In its review, the Court found the common dictionary meanings of "loss" pointed to an ordinary meaning of "actual loss", rather than the broad commentary definition. It stated, "We need not decide, however, whether one clear meaning of the word "loss" emerges broadly, covering every application of the word. Rather, we must decide whether, in the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word "loss" is the loss the victim actually suffered. We conclude it is." Id.

The plain meaning of §4B1.5(b) and its use of the word "pattern" does not encompass Mr. Bernard here. Styled as a guideline to address "Repeat and Dangerous Sex Offender Against Minors", §4B1.5(b)(1) plainly sets out to punish more severely those on par with offenders that have convictions over time which qualify them as Career Offenders or offenders with at least one prior sex offense conviction. That is, those that have demonstrated over the long-term they present a continuing danger on par with one that has the sort of background of a Career Offender or one that has a prior sex conviction. It is undoubtedly a "catchall" provision to capture those who have evaded serious guideline assessments by virtue of a dated conviction history or the sort of long-term serious offending which would have resulted in a career offender conviction history. This is clearly not Mr. Bernard.

There is no ambiguity in the guideline's use of the term "pattern" to describe those offenders. It is consistent with the common understanding of the term "pattern".

The 1994 Edition of *Webster's II New Riverside University Dictionary* defines "pattern" as:

>(1)(a) an archetype; (b) an ideal worthy of imitation;
>(2) a plan, diagram, or model to be followed in making things;

>   (3) a representative sample;
>   (4)(a) an artistic or decorative design; (4)(b) a design of natural or accidental origin;
>   (5) a composite of traits or features characteristic of an individual;
>   (6) form and style in an artistic work or body of works;
>   (7)(a) the configuration of identically aimed rifle shots on a target;
>   (7)(b) Distribution and spread of shot from a shotgun;
>   (8) Enough material to make a complete garment;
>   (9) a standardized diagram transmitted to test television picture quality;
>   (10) the ordered flight path of an aircraft about to land.

The 7th Edition of Black's Law Dictionary defines "pattern" as:

>   A mode of behavior or series of acts that are recognizably consistent.

As discussed further below, to read this guideline otherwise would permit an offender with a prior sex offense conviction to be treated more leniently than one without any conviction. Surely this is not a fair reading of this guideline or the meaning of "pattern" when considered with the history, structure and purpose of the guideline. For this reason, the Court should hold that there is no ambiguity in this guideline and that it does not apply in Mr. Bernard's case.

>   **b. Even If Ambiguous and the Court Defers to the Commentary, Mr. Bernard's Instant Offenses Cannot Form the Basis for Finding Applicability of §4B1.5(b)(1).**

The revised presentence report does not definitively indicate which occasions form the basis for its conclusion that §4B1.5(b)(1) applies in this case. PSR ¶51. The government's sentencing memo asserts that "The two counts of conviction of sexual exploitation of children are sufficient to invoke the five-level enhancement under USSG § USSG § 4B1.5(b)(1)." [D.E. 74 at 3]. Mr. Bernard takes the position that even if this guideline is ambiguous and the Court should therefore give deference to the commentary, the occasions of the underlying conviction should not be utilized to establish the enhancement. The "pattern of activity" respecting these two occurrences is already accounted for by USSG § 2G2.1(d)(1)'s mandate that these offenses count separately and ultimately

increase the base offense level. Permitting the instant offenses to be the basis for the applicability of §4B1.5(b)(1) would be unreasonable where the multiplicity of acts is already accounted for.

Counsel has not uncovered any decision where the First Circuit definitively held that the two occasions used to support a finding of a "pattern of activity" may be from the crime of conviction. *But see* United States v. Fox, 926 F.3d 1275, 1281 (11th Cir. 2019)("We now…hold that a defendant's underlying criminal conviction alone can serve as the basis for an enhancement under § 4B1.5(b)(1), provided that the underlying conviction involves separate occasions of prohibited sexual conduct.") *noting holdings in* United States v. Evans, 782, F.3d 1115, 1117 (10th Cir. 2015), United States v. Boxmeyer, 699 F.3d 265, 285 (2nd Cir. 2012), United States v. Rojas, 520 F.3d 876, 883 (8th Cir. 2008). Nor does the government's memorandum point to any such holding from the First Circuit. The First Circuit's decisions regarding § 4B1.5(b)(1) have not involved this direct question – whether the offenses of conviction alone may form the basis of this enhancement?

In United States v. Gaffney-Kessell, the First Circuit found no error in the district court's application of this enhancement where it found that the offense of conviction (one count of travel with intent to engage in criminal sexual activity) and the conduct underlying a pending state criminal charge constituted a pattern of prohibited sexual conduct. 772 F.3d 97, 101 (1st Cir. 2014).

More recently, in United States v. Santiago-Colon, the Court upheld the district court's finding of the enhancement where the defendant asserted that the information relating to an occurrence dismissed before trial was unreliable. 918 F.3d 223, 226 (1st Cir. 2019). The defendant had been convicted at trial of abusing three different victims. Id. at 225. In addressing the defendant's appellate argument regarding the unreliability of the information pertaining to the fourth victim, the First Circuit found first that the district court could easily have found the instance involving the fourth victim reliable based on the official reports of the case agent who interviewed

the fourth victim. Id. at 226. Secondly, the First Circuit held that the defendant failed to provide countervailing information regarding the fourth victim, and therefore the district court was entitled to rely on the facts as asserted in the presentence report. Id. Importantly for the determination in this case, the Court did not further address whether the enhancement was proper based merely on the three victims referenced in the convictions, notwithstanding the defendant's contentions regarding the fourth victim.

The First Circuit's consideration of § 4B1.5(b)(1) application has been limited to these cases, and a case in which the applicability solely involved uncharged occasions. In United States v. Hinkley, the First Circuit sustained under an abuse of discretion standard the district court's application of the enhancement based upon uncharged conduct with a minor. 803 F.3d 85, 92 (1st Cir. 2015). As in Santiago-Colon, there the defendant argued that the reports of sexual contact with the uncharged minor were not sufficiently reliable. Hinkley at 92. In Hinkley, there was one offense of conviction for sexual exploitation of a child relating to an incident that involved two minors' involvement in the same incident. Id. at 88-89. The Court confined its review to the assertions regarding the uncharged acts in that case.

Notwithstanding the holdings of other circuits and those of the First Circuit, Mr. Bernard objects to the proposed finding of the 5-point enhancement based upon the offenses of conviction, as articulated by the government in its memorandum.

**III.    If Found, The Court Should Give No Weight to the Enhancement**

Should this Court disagree with Mr. Bernard's contention regarding the applicability of the enhancement, the Court should nevertheless give little to no weight to its effect on the appropriate sentence in this case. Rather than enlisting a discerning system to more severely punish "repeat and dangerous sex offenders" with greater relative culpability, application of §4B1.5(b) has now

become ubiquitous in production cases. The Sentencing Commission's 2021 report to Congress regarding production offenses notes that more than half (51.6%) of the production offenders sentenced in 2019 alone received the §4B1.5(b) enhancement.[1] This stands in contrast to the Commission's report that just 10 years earlier, only 22.9% of production offenders in 2010 received the enhancement.[2] Conversely, only 5.1% of production offenders sentenced in 2019 received the enhancement under §4B1.5(a), which applies to those with prior sex offense convictions.[3] This enhancement already stands on the shoulders of a pervasive 2 level increase for sexual contact in production offenses. (According to the 2021 Production report, in 2019, 80.9% of production offenses involved sexual contact. Of the 80.9% of offenses involving contact, half involved an offender engaging in sexual contact with a victim.)[4] Adherence to the §4B1.5(b) enhancement results in virtually no distinction between sentences for the most dangerous offenders, and those who are first time offenders that meet the commentary's low threshold.

The irrationality of adherence to this guideline is demonstrated most clearly by considering that if Mr. Bernard had a qualifying prior sex offense conviction, his commission of these same offenses would result in a lower guideline range than what §4B1.5(b) imposes here.[5] Its mechanical application to Mr. Bernard would lead to an unjust result and it should be given little to no weight in

---

[1] *Federal Sentencing of Child Pornography Production Offenses*, October 2021, at 19. Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (Last accessed March 8, 2023).

[2] Id.

[3] Id.

[4] Id. at 35.

[5] Under § 4B1.5(a)(1)(A), the total offense level would be 37 (combined adjusted offense level of 40 reduced for acceptance of responsibility), and his criminal history category would increase under § 4B1.5(a)(2) to V, yielding a guideline range of 324-405 months.

the Court's assessment of an appropriate sentence in this case if the Court finds that the enhancement applies.

## IV. Conclusion

Mr. Bernard reiterates his position in his sentencing memorandum and maintains his view that a sentence of 15 years under the circumstances particular to him and to the facts of this case is adequate, just and proper to effectuate the goals of sentencing and address the factors under 3553(a).

ATTICUS BERNARD
By his Attorney,

/s/Brendan Kelley
Brendan Kelley
BBO 569054
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, Brendan Kelley, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 9, 2023.

/s/ Brendan Kelley
Brendan Kelley